# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

*****************************************************************

UNITED STATES OF AMERICA

CRIMINAL DOCKET NO. 07-425 "J"
V.                                    NEW ORLEANS, LOUISIANA
MONDAY, JULY 18, 2011, 8:30 A.M.

BYRON NEAL

*****************************************************************

TRANSCRIPT OF PROCEEDINGS
HEARD BEFORE THE HONORABLE CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:        U. S. ATTORNEY'S OFFICE
                          BY:  WILLIAM J. QUINLAN, ESQUIRE
                               MATTHEW S. CHESTER, ESQUIRE
                          HALE BOGGS FEDERAL BUILDING
                          500 POYDRAS STREET
                          NEW ORLEANS LA   70130


FOR THE DEFENDANT:        JOHN-MICHAEL LAWRENCE
                          ATTORNEY AT LAW
                          ENERGY CENTER
                          SUITE 2900, PMB 204
                          1100 POYDRAS STREET
                          NEW ORLEANS LA   70163


OFFICIAL COURT REPORTER:        CATHY PEPPER, CCR, RMR, CRR
                                CERTIFIED REALTIME REPORTER
                                500 POYDRAS STREET, ROOM B406
                                NEW ORLEANS LA   70130
                                (504) 589-7779
                                Cathy_Pepper@laed.uscourts.gov

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.   TRANSCRIPT
PRODUCED BY COMPUTER.

2

**P-R-O-C-E-E-D-I-N-G-S**

MONDAY, JULY 18, 2011

M O R N I N G   S E S S I O N

(COURT CALLED TO ORDER)

THE DEPUTY CLERK:  All rise.  Court is now in session.

THE COURT:  Good morning, everyone.  Please be seated.

All right.  We're still waiting on a few jurors to show up.  We have almost enough jurors, so we'll just wait and hopefully in a few minutes we'll have enough to bring them upstairs.

Someone mentioned that we had had a couple of preliminary matters to talk about?

MR. QUINLAN:  Yes, sir.  Judge, Jay Quinlan on behalf of the United States.

THE COURT:  Let everybody make their appearances.

MR. QUINLAN:  And Matt Chester also on behalf of the United States.

MR. LAWRENCE:  John Michael Lawrence on behalf of Byron Neal, who is present before the Court, Your Honor, and has expressed a desire to address the Court himself.

THE COURT:  We'll do that in a minute.  Let the record reflect that Mr. Neal, the defendant, is present.

Okay.  Go ahead.

MR. QUINLAN: Judge, I asked Mr. Clayton to bring to your attention, that there are probably two things we needed to address on the record before the jury got here.

Number 1 is, I just wanted to put it on the record, I have communicated with the Court late last week, Friday, maybe Thursday afternoon, Friday of last week, as well as to Mr. Lawrence, the fact that the Department of Justice has issued some new directives to the U.S. Attorney's offices with regards to potential sentencing treatments in cocaine base offenses.

As the Court is aware, back in August of 2010, the Fair Sentencing Act was passed, which the net effect of it raised the threshold quantities necessary to affect statutory minimum sentences. In particular, under 21 U.S.C. §841(b)(1)(A), previously the law was 50 grams or more of cocaine base was necessary to be proven in order to affect a 10-year minimum. That has been raised to 280 grams.

Mr. Neal, whose distribution, as the Court is aware, was charged as occurring in 2007 was under the old law. Until late last week, we were instructed to treat cases that were charged where offense conduct occurred before the change by the Fair Sentencing Act as being under the old law. On Friday of last week, new directives were given to us that for anyone who has not been sentenced as of August 3, 2010, that the new law should apply, and that has consequences as to Mr. Neal's situation.

Because Mr. Neal is charged in Count 1 with distribution of over 50 grams, and similarly in Count 2, and I'll inform the Court that it is the government's evidence that each of those distributions are in the order of 55 grams and 51 to 52 --

THE COURT:  It's not going to reach 280.

MR. QUINLAN:  Even with the small seizure of crack cocaine that's charged in Count 3, when you add all three of those together, it's still only about 108 or 110 grams.  I haven't done the exact math.  Either way, it's not getting close to 280 grams.

How that impacts Mr. Neal is as follows, Judge:  If he were to be convicted as charged as to Count 1 or Count 2, because we don't cross the 280-gram threshold, he becomes subject to sentencing under not 21 U.S.C. §841(b)(1)(A) but rather (b)(1)(B) where the minimum is 28 grams now under the new law.

So the impact of that is in advance of trial, when our old directives were still in place, I had filed a sentence enhancement under 21 U.S.C. §851.  Under the old law that would have mandated, had Mr. Neal been convicted as charged as to either Count 1 or Count 2, because he has two or more prior felony drug convictions in his past, he would have been looking the a mandatory life sentence.

Under these new directives -- now, obviously they don't bind the Court, but nonetheless, I want to inform the Court

what the Department of Justice's position is as of July 14th, last Friday -- now under 21 U.S.C. §841(b)(1)(B), Mr. Neal -- because I filed the sentence enhancement, Mr. Neal's statutory minimum sentence will be 10 years up to a maximum of life, but obviously there is not a mandatory life sentence as was the case previously.

I communicated that to Mr. Lawrence so that he could have conversations with Mr. Neal about this on Friday and over the weekend. It's my understanding from Mr. Lawrence that they have covered that subject matter, but I wanted to make sure so that in the event of a conviction in any way, shape, or form, Mr. Neal has been made aware in court on the record of this change in policy by the Department of Justice so he can factor that into his decision-making with regards to his desire to go to trial.

THE COURT: All right. Thank you very much.

I'm assuming, Mr. Lawrence, that you've had that discussion with Mr. Neal?

MR. LAWRENCE: Thoroughly, Judge. We thoroughly discussed the directive. We thoroughly discussed the evidence, the transcript, the reports, Mr. Shad Neal's testimony and factual basis. We discussed everything on the case.

Mr. Neal and I are diametrically opposed in our opinions on what this all means, and Mr. Neal would like to address the Court.

THE COURT:  All right.  Mr. Neal, come forward up here by the microphone, sir.  Before you do, I have got to advise you that anything you say now could be used against you at trial. You need to be aware of that.  Do you understand?

THE DEFENDANT:  Yes, sir, Your Honor.

Me and my attorney, we had went and discussed it, but what he telling me about the deal and everything, I don't see how if it ain't no deal I still be looking at 20, 30 years without going to trial.  So I feel like I would like to go to trial, but he's saying we ain't got no defense and I'm guilty, and it ain't no sense if I ain't got no help.

THE COURT:  It's up to you, Mr. Neal.  You make the decision whether you want to go to trial.

THE DEFENDANT:  I made the decision.  What I'm saying -- that's not what I'm saying.  He's saying he ain't going to fight. What am I going to trial for if it's already rigged up?

THE COURT:  There is nothing rigged up around here, I can tell you.  I think Mr. Lawrence is trying to give you the best advice he can give you.  It's your decision whether to take his advice or reject his advice, but that's your decision.

All he can do is give you his best advice.  You can accept it or you can reject it.  We're all ready here.  We're going to trial in a few minutes, as soon as the jury arrives.  If you want to take some other action, decision on pleading guilty, that's up to you.  If you want to go to trial, that's up to you.

Either decision is fine.

THE DEFENDANT: What I' saying -- what I'm trying -- if he ain't going to represent me --

THE COURT: He's representing you, okay?

THE DEFENDANT: So what I'm saying --

THE COURT: He's representing you, okay? He has been representing you; he's going to continue to represent you.

THE DEFENDANT: So he's going to fight in trial for me?

THE COURT: Yes. But you're still facing the same evidence. With or without a lawyer or with this lawyer or any other lawyer it's not going to change the evidence against you. That's what he's trying to tell you. Okay?

THE DEFENDANT: I understand it.

THE COURT: All right. Thank you, sir. You can have a seat.

Does anybody have anything else before we check on the jury? Do we know how many jurors are available now, Eileen?

THE DEPUTY CLERK: There were 35 when we came in.

THE COURT: Why don't you go check and see before we leave the bench.

I'm going to step off the bench. We'll recess. I told them to let us know when we have at least 40 jurors there. We have 35 now.

How much time are you going to ask for opening?

MR. QUINLAN: Judge, if I take 15 minutes I would be

surprised.

THE COURT: Mr. Lawrence, y'all will have the same.

MR. LAWRENCE: Five.

(WHEREUPON, at this point in the proceedings, after a brief recess the jury was selected.)

THE COURT SECURITY OFFICER: All rise for the jury.

(WHEREUPON, at this point in the proceedings, the jury panel leaves the courtroom.)

THE COURT: Let the record reflect the jury is now out of the courtroom. All right. I understand that counsel may have some negotiating settlement of this matter? Does anybody want to speak to this?

MR. LAWRENCE: Yes, sir. We are prepared to enter a plea in the matter. We do not have a plea agreement, but we do have a signed factual basis.

THE COURT: So is he going to plead straight up without a plea agreement? Is that what he's going to do?

MR. LAWRENCE: That's correct.

THE COURT: Okay. Mr. Neal, if you would come up to the podium, please, sir. Stand in front of the podium, please.

All right. Let the record reflect Mr. Neal is present; counsel, Mr. Lawrence is present, and Mr. Quinlan for the government.

All right. Mr. Neal, your counsel has advised me that you have decided you would like to change your plea from not

guilty to guilty; is that correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  You're going to have to answer out loud so I can hear you, sir.  Okay?

THE DEFENDANT:  Yes, sir.

THE COURT:  Before we decide whether to take your plea, I need to ask you a series of questions and your answers must be given under oath, so at this time, I'll ask our case manager, Ms. Kall, to swear you in, okay?

THE DEPUTY CLERK:  Would you please raise your right hand.  Do you solemnly swear that the testimony which you are about to give will be the truth, the whole truth, and nothing but the truth, so help you God?

THE DEFENDANT:  Yes.

THE COURT:  Give me a minute here.  One second.

All right.  Sir, state your full name, please.

THE DEFENDANT:  Byron Earl Neal.

THE COURT:  Mr. Neal, how old are you, sir?

THE DEFENDANT:  41.

THE COURT:  How far did you go in school?

THE DEFENDANT:  Ninth grade, I think, 7th.  7th and they moved me up to the 9th.

THE COURT:  What school was that, sir?

THE DEFENDANT:  The last school I went to was Springfield High School, Livingston Parish.

10

THE COURT:  That's in Livingston Parish?

THE DEFENDANT:  Yes, sir.

THE COURT:  So I'm assuming, am I right, that you can read and write the English language satisfactorily?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  Do you understand that you're now giving your answers to my questions under oath, and it's important that your answers be truthful because, otherwise, the government could bring additional charges against you for perjury or making false statements?  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  Have you had any narcotic drugs, medicines, pills, alcoholic beverages of any sort in the last 24 hours?

THE DEFENDANT:  Yes, sir.

THE COURT:  Tell me about that.  What have you had?

THE DEFENDANT:  Well, I had Lopid -- I had about five medications for high cholesterol.

THE COURT:  Eileen, can you turn the sound up a little bit?

THE DEFENDANT:  Pain pills and stuff like that.

THE COURT:  Eileen, is that sound system on?

MR. LAWRENCE:  It's on here, Judge.

THE COURT:  You just need to speak up a little bit, if you can, Mr. Neal, okay?

THE DEFENDANT:  Yes, sir.

THE COURT:  So, you said for high blood pressure or cholesterol, you said?

THE DEFENDANT:  Yes, sir.

THE COURT:  Anything else?

THE DEFENDANT:  And Washington took my CPAP machine.  I ain't had my CPAP.  I ain't bee able to sleep.  They took that.

THE COURT:  That's for sleep apnea.

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  Are you getting any side effects right now from any of the medications?

THE DEFENDANT:  My side be hurting.  I be getting numb and all that, yes, sir.

THE COURT:  You understand what's going on, though, here right now, don't you?

THE DEFENDANT:  To a degree.

THE COURT:  What do you not understand?

THE DEFENDANT:  Well, I'm trying to figure out, I understand I got to take the plea deal, but is there any way possible I could go to trial on the conspiracy?

THE COURT:  Well, we're not going to negotiate a plea here right now.  You need to either plead guilty, if that's what you want to do or go to trial.  You have a choice, but we're not negotiating a plea agreement here now.  You're either going to plead or you're not going to plead.  That's your choice.

THE DEFENDANT:  I'm going to go with it.

THE COURT:  Let me ask you this:  Have you reviewed and seen the superseding indictment containing the charge against you?

THE DEFENDANT:  Yes, sir.

THE COURT:  Have you gone over that with Mr. Lawrence, reviewed the charges with Mr. Lawrence?

THE DEFENDANT:  Yes, sir.

THE COURT:  It's my understanding you're going to plead guilty to Counts 1 through 5 here this morning; is that correct?

MR. LAWRENCE:  Yes.

THE COURT:  You have to answer, sir, out loud so I can hear you, okay?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  As I said before, before I accept your plea, I need to ask a series of questions, and if you don't understand any of my questions, I want you to let me know that, okay?

THE DEFENDANT:  Yes, sir.

THE COURT:  I'll restate or rephrase the question for you.  Also, if you need a moment to speak to Mr. Lawrence before answering any particular question, if you let me know that I'll allow you the time to do that, okay?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  Mr. Lawrence.

MR. LAWRENCE: Yes, sir.

THE COURT: Tell me, have you discussed the charges, any possible defenses your client may have with him, and are you satisfied that he understands the nature of the charges against him?

MR. LAWRENCE: We discussed them thoroughly, Judge, and I'm satisfied that he understands the nature of the charges.

THE COURT: Do you think he's competent to plead here this morning?

MR. LAWRENCE: Yes, sir.

THE COURT: Sir, Mr. Neal, have you had sufficient time, since you've been charged in this case, to discuss the charges against you and any possible defenses with your attorney, Mr. Lawrence?

THE DEFENDANT: Yes, I have.

THE COURT: Okay. Are you satisfied with the services of your attorney?

THE DEFENDANT: (Conferring with Mr. Lawrence.)

MR. LAWRENCE: Are you happy with your services of your attorney?

THE DEFENDANT: Yes, yes, sir.

THE COURT: Okay. Let me read the bill of information, I'm sorry, the superseding indictment here. Count 1 charges that on or about July 18, 2007, you knowingly and intentionally distributed 50 grams or more of cocaine base or crack cocaine in

violation of United States Codes Title 21 §841(a)(1) and §841(b)(1)(A).  Do you understand what you're charged with in Count 1, the distribution of 50 grams or more of cocaine base?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand that in Count 2 you're charged with the same offense except on a different date, October 29, 2007?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand in Count 3, you're charged with possession with intent to distribute a quantity of cocaine base on that same date, October 29, 2007?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  Count 4 is the conspiracy to murder charge.  This is charging you in Count 4 with conspiring with your brother, Shad Neal, and other persons, conspiring to kill a DEA confidential informant who had assisted the DEA in the investigation of the drug charges against you.  Do you understand what you're charged with in Count 4, sir?

THE DEFENDANT:  Yes, sir.

THE COURT:  Finally, Count 5 relates to the same confidential informant, that sometime on or about January 27th, you and your brother knowingly attempted to kill a known confidential informant with the DEA in order to prevent that informant from attending and testifying at your previously scheduled trial, which then was scheduled for February 17, 2009.

Do you understand what you're charged with in Count 5?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Do you understand that you do not have to plead guilty here today?

THE DEFENDANT: Yes, sir.

THE COURT: In other words, if you wanted to you could maintain your not guilty plea. We've got the jury picked. We could proceed with the trial. Do you understand that if you wanted to do that?

THE DEFENDANT: Yes, sir. I understand.

THE COURT: Okay. You understand if you do plead guilty and I accept your plea, that means we'll send the jury home, there won't be a trial, the government will not be required to prove that you are guilty, and so by pleading guilty you're waiving or giving up your right to a trial by jury. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Let me explain some other rights that go along with a right to a trial so I can satisfy myself that you know what you're giving up if you plead guilty, okay? First of all, you have a right to be represented by an attorney either privately retained and paid for by yourself or an attorney appointed by the Court if you could not afford one. Do you understand that right?

THE DEFENDANT: Yes, sir.

THE COURT:  You have a right to remain silent at the trial.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  At trial the government would be required to confront you with witnesses upon whose testimony it relies to obtain a conviction.  Through your attorney you would have the right to question or cross-examine the witnesses against you.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  At trial you would be presumed innocent unless the government was able to overcome that presumption and prove your guilt beyond any reasonable doubt.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Also at trial you could have the Court issue subpoenas to require other persons to come to court on your behalf.  In other words, if you had people that you wanted to testify for you, the Court would issue subpoenas, and those persons would have to come to court to testify on your behalf. Do you understand that?

THE DEFENDANT:  Yes, sir, but -- I understand that right but I've been gave my attorney people names and they ain't come.

MR. LAWRENCE:  (Conferring with the defendant.)

THE COURT:  I understand that you -- my question is do you understand you have a right to ask the Court to issue

subpoenas to bring other people to court?

THE DEFENDANT: I understand the right, but if I had a right why I couldn't get the people I wanted subpoenaed to court? He wouldn't do it.

THE COURT: I don't know what that's about. I have no idea.

MR. LAWRENCE: Your Honor, one suggestion was the news crew in Washington who made a report about people setting up folks down here. We discussed possible witnesses.

THE COURT: Your lawyer sounds like he made, he --

THE DEFENDANT: No, I'm talking about witnesses in the jail what happened -- when it happened with this incident, sir. And he said -- I asked him about it for my defense, and if today -- they in prison. He wouldn't subpoena. That's been a long time.

THE COURT: All right. Well, again I'm going to ask you if you want to proceed and plead guilty or do you want to go to trial?

THE DEFENDANT: I guess I'm going to go. Keep on going with the pleading.

THE COURT: Do you understand that you have the right to subpoena witnesses to come to court on your behalf?

THE DEFENDANT: Yes, sir. Yes, sir.

THE COURT: You understand that at trial you would have the right to testify on your behalf, if you chose to, but you

also have the right not the testify and not to incriminate yourself.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If you plead guilty here this morning, Mr. Neal, and I accept that plea, do you understand you're waiving your right to a trial, which means a trial by a jury of 12 persons, and you also are waiving these other rights we've just discussed, and in that event there will be no further trial; instead, I'll simply enter a judgment of guilty today, and then we'll sentence you at a later date.  Do you understand that, sir?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  Are you still willing to waive and give up your right to a trial by jury or judge?

THE DEFENDANT:  I guess I ain't got -- yes, sir.

THE COURT:  Well, you got to say "yes" or "no."  Are you willing to do that?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  I've summarized the charges against you.  You said you understand what you're charged with in each of the five counts.  Let me ask you again, sir, with respect to Count 1 and 2, which are the two counts of distribution of 50 grams or more of cocaine base on the two days, July 18th and October 29, 2007, did you, in fact, do or commit those acts as charged in Counts 1 and 2?

THE DEFENDANT:  Yes, sir.

THE COURT:  Count 3, did you, in fact, possess with intent to distribute a certain quantity of cocaine base on October 29, 2007?

THE DEFENDANT:  No, sir.

THE COURT:  You did not?

THE DEFENDANT:  No, sir.  Talking about on Count 3?

THE COURT:  Count 3 says --

THE DEFENDANT:  What they found in my car, sir, what they found.

MR. QUINLAN:  That's correct.  There was an amount of cocaine base that was found in his car.

THE COURT:  It was a smaller amount, right?  This is the lesser amount.

MR. QUINLAN:  2 grams.

MR. LAWRENCE:  (Conferring with the defendant.)

THE DEFENDANT:  Sir?

THE COURT:  We're talking about this is the amount that they found in your car on October 29th, when you were arrested in 2007.  Do you admit that you --

THE DEFENDANT:  Yes, sir.  Yes, sir.

THE COURT:  -- that you had a quantity of cocaine in your car with intent to distribute?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  Count 4, conspiracy to murder the confidential informant.  Do you admit that you conspired and

agreed with your brother, Shad Neal, and other persons to kill the confidential DEA informant who had assisted the DEA in their investigation of your drug dealing?  Do you admit that or did you do that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Finally, Count 5, tampering with the witness or informant, again, on or about January 27th, did you and your brother, Shad Neal, knowingly attempt to kill a known confidential informant in order to prevent his attendance and testimony at your then scheduled February 17, 2009, trial?

THE DEFENDANT:  Yes, sir.

THE COURT:  If you are convicted on these charges, Mr. Neal, I need to advise you as to the maximum possible penalties for these offenses.  Do you have those?

MR. QUINLAN:  I can recite them, Judge, if you would like.

THE COURT:  Please do.

Listen to this, I'm going to ask the government to recite the maximum possible penalties for each of these offenses.

MR. QUINLAN:  Judge, not to complicate matters but I will say with the caveat that I discussed with the Court this morning given the Department of Justice's relaxing of the minimums with regards to -- with regards to the cocaine base penalties.  So I will say it with those assumptions in mind, Your Honor.

Mr. Neal, as to Count 1 and Count 2, the penalty ranges are the same. Because you have a prior felony drug conviction in your past, the minimum term of imprisonment as to Count 1 or Count 2 is 10 years imprisonment. There is a maximum of up to life imprisonment. After a term of imprisonment there is a supervised release term of at least 5 years, and there is a mandatory -- a fine potential of up to $4 million and a mandatory special assessment of $100 as to each count.

As to Count 3, the possession with the intent to distribute charge, there is no mandatory minimum penalty. The maximum is 20 years. There is a fine potential of up to $1 million, a supervised release term of at least 3 years, and a mandatory special assessment of $100.

As to the conspiracy count charged in Count 4, there is no mandatory minimum charge. There is a maximum similar to Counts 1 and 2 of life imprisonment. There is a supervised release term of 5 years, a fine potential of $250,000, and a another mandatory special assessment of $100.

As to Count 5, there is no mandatory minimum term of imprisonment. There is a maximum of up to 30 years. After any term of imprisonment there is a supervised release term of at least 5 years or up to 5 years, a fine potential of $250,000, and a $100 special assessment.

Those are the minimum and maximum penalties for the charges that are contained in the indictment. Do you understand

those penalties?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  Do you have any questions about the maximum possible penalties or what's called the *mandatory minimum penalties*, Mr. Neal?

MR. LAWRENCE:  No.

THE DEFENDANT:  No.

THE COURT:  Okay.  Do you understand that ultimately it's going to be my job to decide what the sentence is in your case?  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  What the government said is based on the charges that you are pleading guilty to, the minimum sentence will be 10 years, the maximum could be life, or the sentence could be anywhere in between there.  Do you understand that, sir?

THE DEFENDANT:  Yes, yes, sir.

THE COURT:  They mention that following any time you have to spend in prison, when you are released, you would on supervised release for up to, I guess, 5 years.

MR. QUINLAN:  Correct, Your Honor.

THE COURT:  There would be conditions imposed upon you during that time.  If you violated any of those conditions during that term, the government could elect to bring you back here, ask me to vacate, or set aside, your release and return you to prison if you violated any of your conditions of release.  Do you

23

understand that, Mr. Neal?

MR. QUINLAN:  Judge, I apologize.  As to Counts 1 and 2, the minimum maximum penalties are the same.  The supervised release would term would be 8 years, not 5.

THE COURT:  So it would be 8 years, not 5 years.  So the supervised release could be anywhere from up to 8 years.

MR. LAWRENCE:  Like after you got out of jail.

THE COURT:  It's kind of like being on probation, you would have conditions imposed on you, and if you violated any of those, they could seek to revoke your supervised release.  Do you understand that, sir?

THE DEFENDANT:  Yes, sir.

THE COURT:  Have you spoken to your attorney, Mr. Lawrence, about the Federal Sentencing Guidelines and how those might apply to your particular case?

MR. LAWRENCE:  (Conferring with the defendant.)

THE DEFENDANT:  Yes.

THE COURT:  Do you understand whatever he's told you about the guidelines at this point is based on his best estimate or best judgment, but that ultimately it's my job to determine what the correct guideline is for your case?  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you also understand that the guidelines are not binding or not mandatory.  I am required to calculate the

guidelines and take them into account, but after doing so I could decide, for certain reasons, to sentence you above the guideline range or below the guideline range. Do you understand that, Mr. Neal?

THE DEFENDANT: Yes, sir.

THE COURT: All right, sir. How do you plead to Count 1 of this superseding indictment?

THE DEFENDANT: Guilty.

THE COURT: How do you plead to Count 2?

THE DEFENDANT: Guilty.

THE COURT: How do you plead to Count 3?

THE DEFENDANT: Guilty.

THE COURT: How do you plead to Count 4?

THE DEFENDANT: Guilty.

THE COURT: How do you plead to Count 5?

THE DEFENDANT: Guilty.

THE COURT: Are you pleading guilty to those counts because you are, in fact, guilty of the crime charged in each of those Counts 1 through 5?

THE DEFENDANT: Yes.

THE COURT: All right. Is there a plea agreement in the case?

MR. QUINLAN: No, sir.

MR. LAWRENCE: No, sir.

THE COURT: All right, sir. Has anyone made any

promises to you that made you decide to change your plea from not guilty to guilty?

THE DEFENDANT:  No.  No, sir.

THE COURT:  Has anyone threatened you or forced you in any way to plead guilty here today?

THE DEFENDANT:  No, sir.

THE COURT:  Has anyone connected with the government, anyone connected with law enforcement or anyone else, including your own attorney, at any time promised you what your sentence will be in this case?

THE DEFENDANT:  No, sir.

THE COURT:  I didn't hear your answer.

THE DEFENDANT:  No, sir.

THE COURT:  Is there a factual basis for this plea?

MR. QUINLAN:  There is, Your Honor.  I have before me a five-page document entitled *United States of America v. Byron Neal*.  It's a factual basis.  I have signed it on behalf of the government, as well as Mr. Chester.  It has also been signed this morning by Mr. Lawrence and Mr. Neal.

Mr. Neal, is that your signature?

THE DEFENDANT:  Yes, sir.

MR. QUINLAN:  Did you sign that this morning in court after going over this document with Mr. Lawrence?

THE DEFENDANT:  Yes, sir.

MR. QUINLAN:  Is the document accurate?  Is it correct?

THE DEFENDANT: Yes, sir.

MR. QUINLAN: Mr. Lawrence, is that also your signature?

MR. LAWRENCE: Yes, it is.

MR. QUINLAN: Your Honor, I submit the factual basis to the Court.

THE COURT: All right. Mr. Neal, you read over this factual basis statement and discussed it with your attorney, Mr. Lawrence?

THE DEFENDANT: Yes, sir.

THE COURT: Then you signed it, right?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that this is a summary of what the government's evidence against you would be if your case went to trial?

THE DEFENDANT: Yes, sir.

THE COURT: Do you admit and agree that what is set forth in here with respect to you is what you did in this case?

THE DEFENDANT: Yes, sir.

THE COURT: All right, sir. Because I find that your plea is knowledgeable, voluntary, and has a basis in fact containing all of the elements of the crimes charged in each of Counts 1 through 5 of the superseding indictment, I hereby accept your guilty pleas to those five counts and enter a judgment of guilty based upon your pleas.

I'm going to schedule your sentencing, Mr. Neal,

for October 20, 2012, at 9:30 a.m.  Meanwhile, I'm going to order what's called *a presentence investigation*.  That means that someone from our Federal Probation Office -- I guess we have no one here now from probation.  I don't know, would the marshals be able to facilitate them meeting with him today since he's here today?  It might speed things along.  We can call probation.

I'm going to order a presentence investigation. Someone from our Federal Probation Office will seek permission through your attorney to meet with you, and they'll take whatever information they may be able to obtain from you and from other sources, they'll put all of that into what's called *a written presentence report*.

Your attorney will receive a copy of that report in advance of your sentencing date.  You'll have a chance to meet with your attorney, read the report for yourself, discuss it with your attorney, and through your attorney file any objections or comments or response that you or your attorney care to make to the presentence report.  Do you understand that, Mr. Neal?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  Is there anything else, Counsel?

MR. QUINLAN:  No, sir.

MR. LAWRENCE:  No, sir.

THE COURT:  All right.  The defendant is in custody.  So I'm going to order that he be remanded pending his sentencing date.

MR. LAWRENCE:   Thank you, Judge.

THE COURT:   Thank you, Counsel.

THE DEPUTY CLERK:   All rise.

THE COURT:   Mr. Lawrence, are you going to go up to probation?

MR. LAWRENCE:   Yes, I'm going to go to Probation, Judge, and get someone and bring him up there.

THE COURT:   Thank you very much.   Thank you, Counsel.

THE DEPUTY CLERK:   All rise.

THE COURT:   Do you all want to come back for when the jury comes here at 12:45, because what I'm going to do is bring them in the courtroom and discharge them.

MR. QUINLAN:   I'm certainly willing to out of respect to the process.   I have no problem doing that, Your Honor.

MR. LAWRENCE:   That's up to you, Judge.

MR. QUINLAN:   If you want is to be here, Judge, we'll certainly be here.

THE COURT:   I think we probably should.

MR. QUINLAN:   That's fine.

MR. LAWRENCE:   What time?

MR. QUINLAN:   12:45, I think.

THE COURT:   12:45.   I think the defendant will have to be back down here, too.   Everyone should be here at 12:45.

(WHEREUPON, at this point in the proceedings, the Court was in luncheon recess.)

THE DEPUTY CLERK:  All rise.

THE COURT:  Counsel is present.  The defendant is present.  We're ready for the jury.

THE COURT SECURITY OFFICER:  All rise for the jury.

(WHEREUPON, at this point in the proceedings, the jury panel enters the courtroom.)

THE COURT:  All right.  Ladies and gentlemen, please be seated.  Sorry we ran a few minutes late getting you back here after the lunch recess, but there is good news for you.  While you all were at lunch, the parties worked out a resolution of this case, so we will not need you to continue your jury service in this trial.

I don't know if that makes you happy or sad, but in any event, I want to tell you that we appreciate your being here and being willing to serve, and they do need to check out on the first floor on the way out, right, Eileen?  So you all can check out back on the first floor, and you do get compensated for the day and so forth.

Thank you very much and have a nice day.

THE COURT SECURITY OFFICER:  All rise for the jury.

(WHEREUPON, at this point in the proceedings, the jury panel leaves the courtroom.)

THE COURT:  We set a sentencing date.  I announced that.  October 20th is the sentencing date.  Okay.  Anything else by anybody?

MR. LAWRENCE:  No, sir.

MR. QUINLAN:  No.

THE COURT:  All right.  The defendant is remanded pending his sentencing date.

(WHEREUPON, at 1:03 p.m. the proceedings were concluded.)

\*    \*    \*

REPORTER'S CERTIFICATE

I, Cathy Pepper, Certified Realtime Reporter, Registered Merit Reporter, Certified Court Reporter of the State of Louisiana, Official Court Reporter for the United States District Court, Eastern District of Louisiana, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.

s/Cathy Pepper
_____

Cathy Pepper, CRR, RMR, CCR
Certified Realtime Reporter
Official Court Reporter
United States District Court
Cathy_Pepper@laed.uscourts.gov

1

## $

$100 [4] - 21:8, 21:13, 21:18, 21:23
$250,000 [2] - 21:17, 21:22

## 0

07-425 [1] - 1:5

## 1

1 [17] - 3:4, 4:1, 4:13, 4:21, 12:10, 13:23, 14:3, 18:21, 18:24, 21:1, 21:4, 21:12, 21:16, 23:2, 24:6, 24:19, 26:22
10 [3] - 5:4, 21:4, 22:14
10-year [1] - 3:15
108 [1] - 4:9
110 [1] - 4:9
1100 [1] - 1:19
12 [1] - 18:7
12:45 [4] - 28:11, 28:21, 28:22, 28:23
14th [1] - 5:1
15 [1] - 7:25
17 [2] - 14:25, 20:10
18 [3] - 1:6, 2:2, 13:24
18th [1] - 18:22
1:03 [1] - 30:5

## 2

2 [12] - 4:2, 4:13, 4:21, 14:5, 18:21, 18:24, 19:14, 21:1, 21:4, 21:16, 23:2, 24:9
20 [3] - 6:8, 21:11, 27:1
2007 [7] - 3:18, 13:24, 14:7, 14:11, 18:23, 19:3, 19:19
2009 [2] - 14:25, 20:10
2010 [2] - 3:10, 3:23
2011 [2] - 1:6, 2:2
2012 [1] - 27:1
204 [1] - 1:18
20th [1] - 29:24
21 [5] - 3:13, 4:15, 4:19, 5:2, 14:1
24 [1] - 10:14
27th [2] - 14:21, 20:7
28 [1] - 4:16

280 [3] - 3:16, 4:6, 4:11
280-gram [1] - 4:14
29 [4] - 14:7, 14:11, 18:23, 19:3
2900 [1] - 1:18
29th [1] - 19:18

## 3

3 [9] - 3:23, 4:8, 14:9, 19:1, 19:6, 19:7, 21:9, 21:12, 24:11
30 [2] - 6:8, 21:20
35 [2] - 7:18, 7:23

## 4

4 [7] - 14:13, 14:14, 14:18, 19:24, 21:7, 21:14, 24:13
40 [1] - 7:22
41 [1] - 9:19

## 5

5 [15] - 12:10, 14:20, 15:1, 20:6, 21:6, 21:17, 21:19, 21:22, 22:19, 23:4, 23:5, 24:15, 24:19, 26:22
50 [5] - 3:14, 4:2, 13:25, 14:3, 18:22
500 [2] - 1:15, 1:22
504 [1] - 1:23
51 [1] - 4:4
52 [1] - 4:5
55 [1] - 4:4
589-7779 [1] - 1:23

## 7

70130 [2] - 1:15, 1:22
70163 [1] - 1:19
7th [2] - 9:21

## 8

8 [3] - 23:4, 23:5, 23:6
8:30 [1] - 1:6

## 9

9:30 [1] - 27:1
9th [1] - 9:22

## A

A.M [1] - 1:6
a.m [1] - 27:1
ability [1] - 30:17
able [4] - 11:7, 16:11, 27:5, 27:10
above-entitled [1] - 30:18
accept [5] - 6:22, 12:15, 15:12, 18:5, 26:22
account [1] - 24:1
accurate [1] - 25:25
Act [2] - 3:11, 3:21
action [1] - 6:24
acts [1] - 18:23
add [1] - 4:8
additional [1] - 10:9
address [3] - 2:22, 3:3, 5:25
admit [4] - 19:19, 19:25, 20:3, 26:16
advance [2] - 4:17, 27:14
advice [4] - 6:19, 6:20, 6:21
advise [2] - 6:2, 20:13
advised [1] - 8:24
affect [2] - 3:12, 3:15
afford [1] - 15:23
afternoon [1] - 3:6
agree [1] - 26:16
agreed [1] - 20:1
agreement [4] - 8:14, 8:17, 11:24, 24:21
ahead [1] - 2:25
ain't [10] - 6:8, 6:10, 6:11, 6:15, 7:3, 11:7, 16:22, 18:14
alcoholic [1] - 10:13
allow [1] - 12:23
almost [1] - 2:10
AMERICA [1] - 1:4
America [1] - 25:16
amount [4] - 19:10, 19:12, 19:13, 19:17
announced [1] - 29:23
answer [3] - 9:3, 12:12, 25:12
answering [1] - 12:22
answers [3] - 9:7, 10:7, 10:8
apnea [1] - 11:8
apologize [1] - 23:2
appearances [1] - 2:17
APPEARANCES [1] - 1:12

apply [2] - 3:24, 23:15
appointed [1] - 15:23
appreciate [1] - 29:14
arrested [1] - 19:18
arrives [1] - 6:23
aside [1] - 22:24
assessment [4] - 21:8, 21:13, 21:18, 21:23
assisted [2] - 14:16, 20:2
assuming [2] - 5:17, 10:3
assumptions [1] - 20:24
AT [1] - 1:17
attempt [1] - 20:8
attempted [1] - 14:22
attendance [1] - 20:9
attending [1] - 14:24
attention [1] - 3:2
attorney [17] - 6:6, 13:13, 13:17, 13:20, 15:21, 15:22, 16:6, 16:22, 23:13, 25:9, 26:7, 27:9, 27:13, 27:15, 27:16, 27:17
ATTORNEY [1] - 1:17
Attorney's [1] - 3:8
ATTORNEY'S [1] - 1:13
August [2] - 3:10, 3:23
available [1] - 7:17
aware [4] - 3:10, 3:18, 5:12, 6:4

## B

b)(1)(B [1] - 4:16
B406 [1] - 1:22
BARBIER [1] - 1:10
base [9] - 3:9, 3:14, 13:25, 14:3, 14:11, 18:22, 19:2, 19:11, 20:23
based [3] - 22:12, 23:19, 26:24
basis [7] - 5:22, 8:15, 25:14, 25:17, 26:4, 26:7, 26:20
becomes [1] - 4:14
bee [1] - 11:7
BEFORE [1] - 1:10
behalf [8] - 2:15, 2:18, 2:20, 16:17, 16:19, 17:22, 17:25, 25:17
below [1] - 24:3
bench [2] - 7:20, 7:21
best [5] - 6:19, 6:21, 23:19, 23:20, 30:16

between [1] - 22:15
beverages [1] - 10:13
beyond [1] - 16:12
bill [1] - 13:22
bind [1] - 4:25
binding [1] - 23:25
bit [2] - 10:20, 10:24
blood [1] - 11:2
BOGGS [1] - 1:14
brief [1] - 8:5
bring [7] - 2:11, 3:1, 10:9, 17:1, 22:23, 28:7, 28:11
brother [4] - 14:15, 14:22, 20:1, 20:8
BUILDING [1] - 1:14
BY [3] - 1:13, 1:24, 1:25
Byron [3] - 2:21, 9:17, 25:17
BYRON [1] - 1:7

## C

calculate [1] - 23:25
CALLED [1] - 2:4
car [4] - 19:8, 19:11, 19:18, 19:22
care [1] - 27:17
CARL [1] - 1:10
case [12] - 5:5, 5:22, 9:8, 13:12, 22:10, 23:15, 23:21, 24:22, 25:10, 26:13, 26:17, 29:11
cases [1] - 3:19
Cathy [2] - 30:12, 30:22
CATHY [1] - 1:21
Cathy_Pepper@laed.uscourts.gov [2] - 1:23, 30:24
caveat [1] - 20:21
CCR [2] - 1:21, 30:22
CENTER [1] - 1:18
certain [2] - 19:2, 24:2
certainly [2] - 28:13, 28:17
CERTIFICATE [1] - 30:10
CERTIFIED [1] - 1:21
Certified [3] - 30:12, 30:13, 30:22
certify [1] - 30:15
chance [1] - 27:14
change [5] - 3:20, 5:13, 7:11, 8:25, 25:1
charge [4] - 12:3,