**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.  07-425** |
| **v.** | * | **SECTION:  "J"** |
| **BYRON NEAL** | * | |
| | * * * | |

**UNITED STATES' RESPONSE TO DEFENDANT'S**
**MOTION FOR COMPASSIONATE RELEASE**

The United States of America, through the undersigned Assistant United States Attorney,

asks that this Court deny the defendant's (hereinafter "Neal") motion for compassionate release.

He fails to set any "extraordinary and compelling" reasons under 18 § U.S.C. 3582(c)(1)(A)(i) which

are required for this court to give him any relief.

**FACTUAL BACKGROUND**

In 2009, the grand jury indicted Byron Neal charging him with five offenses: two

distributions of at least fifty grams of crack (Counts 1 and 2); possession with intent to distribute

a quantity of crack (Count 3); conspiracy to murder a confidential informant (Count 4); and

tampering with a witness or informant (Count 5). SS Ind't (R. Doc. 52, pp. 1-4); PSR ¶¶ 7-10. On

the morning of the scheduled trial, Neal pleaded guilty to all counts. PSR ¶ 14.

At the time of the offense, Neal faced at least ten years in prison for Counts 1 and 2,

considering the threshold-quantity of fifty grams of crack, and a maximum of twenty years for

Count 3. *See* 21 U.S.C. § 841(b)(1)(A), (C) (2009).[1] United States Probation determined that Neal

---

[1] The government had noticed Neal's prior felony drug convictions in a bill of information under 21 U.S.C. § 851 that would have enhanced the sentence, see R. Doc. 193, but it later moved to dismiss them at sentencing. See Sent. Tr. (R. Doc. 236, pp. 11-12, 30). Neal was sentenced before the Supreme Court decided Dorsey v. United States, 567 U.S. 260 (2012), which held that the lower mandatory minimums of the Fair Sentencing Act of 2010 applied to defendants like Neal who were sentenced after its enactment.

was a career offender, resulting in a total offense level 37 and criminal history category VI that yielded a Guidelines range of 360 months to life imprisonment. PSR ¶¶ 59-61, 118; *see also* Statement of Reasons 1.[2]

The Court sentenced Neal to a total of 360 months in prison. Judgment (R. Doc. 223, p. 2). The sentence consisted of concurrent terms of 360 months for Counts 1, 2, 4, and 5, and a concurrent term of 240 months for Count 3. Judgment 2.

The Fifth Circuit vacated Neal's convictions on Counts 4 and 5, holding that the Court erred in explaining Neal's options during the Rule 11 plea colloquy. *United States v. Neal*, 509 F. App'x 302, 306-10 (5th Cir. 2013). However, it affirmed the Court's denial of Neal's motion to withdraw his guilty plea on Counts 1 through 3, *id.* at 310-12, and it affirmed Neal's 360-month sentence on those counts. *Id.* at 312-13. On remand, "[i]n light of the thirty year sentence," the government moved to dismiss Counts 4 and 5. Mot. to Dismiss (R. Doc. 250, pp. 1-2). It requested that dismissal be without prejudice because of its understanding that "Neal is pursuing further relief as to counts one through three." Mot. to Dismiss 1. The Court granted the motion. R. Doc. 253.

In 2018, the President signed into law the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 ("First Step Act"). Section 404(b) of the First Step Act allowed defendants sentenced under statutory, mandatory minimum provisions for crack offenses under 21 U.S.C. § 841(b)(1)(A) prior to August 3, 2010, that were lowered by the Fair Sentencing Act of 2010, Pub. L. No. 111–220; 124 Stat. 2372 ("Fair Sentencing Act"), to petition courts to reduce their

---

[2] The total offense level resulted after considering the offense levels generated by the convictions for Counts 4 and 5, relating to Neal's attempts to arrange for the murder of an informant. See PSR ¶¶ 21-32, 41-61.

sentences as if the lower sentencing provisions were in effect at the time the offenses were committed. Neal took advantage of this new law and sought relief under it.

The government opposed a reduction. The Federal Public Defender enrolled on behalf of Neal. R. Docs. 320-21. The Court denied Neal's motion on March 4, 2015. (Rec. Doc. 266). Neal has served only a small portion of his originally imposed sentence and is currently housed at Federal Correctional Institute Terminal Island in San Pedro, California with a projected release of July 6, 2033. *See* Bureau of Prisons Inmate Locator ([www.bop.gov/inmateloc](www.bop.gov/inmateloc)) (as of June 12, 2020). Neal filed a motion for compassionate release on June 1, 2020. (Rec. Doc. 332). The government opposed this motion. (Rec. Doc. 335). The Court denied Neal's motion. (Rec. Doc. 339). Neal's latest filing seeks relief under 18 § U.S.C. 3582(c)(1)(A) and the First Step Act of 2018. (rec. Doc. 397). The government opposes Neals's motion as it has no basis in law or fact and fails to set out an "extraordinary and compelling" reasons under 18 § U.S.C. 3582.

## LAW AND ARGUMENT

### I.       Neal's conviction and other relevant legal background

As this Court is aware, Neal was convicted, among other offenses, of conspiring to murder a government witness. This court sentenced him originally to 360 months. (Rec. Doc. 223). Neal filed a 28 U.S.C. 2225 motion in 2015 (Rec. Doc. 259) which the court denied. He filed a "First Step Act" Motion in 2019 (Rec. Doc. 317 and Rec. Doc. 326), which the court denied. The court recognized the brazenness of Neal's conduct which resulted in the conviction:

> Yet the record reflects that Neal conspired to murder an informant while in custody and awaiting trial for his drug offenses. Specifically, asked his brother Shad to hire a hitman and put him touch with the undercover agent posing as a hitman. Shad then met with the agent and drive around with him attempting to locate the informant. Shortly afterwards, Shad was arrested and confessed that he was assisting Neal with trying to have the informant killed.

He pleaded guilty to conspiracy to murder a person assisting the Drug Enforcement Administration and was sentenced to 147 months of imprisonment. Considering the nature and circumstances of the offense and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law , and to provide just punishment for the offense, see § 3553(a)(1)—(2)(A), the Court declines to exercise its discretion to reduce Neal's sentence. (Rec. Doc. 327 p. 5).

## II.      Neal claims to have exhausted his administrative remedies as required for a compassionate release motion.

"Generally, courts 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Millsaps*, No. 95-377, 2021 WL 2291137, at *1 (E.D. La. June 4, 2021) (Lemmon, J.) (quoting *Dillon v. United States*, 560 U.S. 817, 819 (2010)). "However, title 18, section 3582 of the United States Code permits the court to reduce a term of imprisonment only after considering the applicable factors set forth in section 3553(a) and upon a finding that extraordinary and compelling reasons warrant a reduction and that a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* (citing 18 U.S.C. § 3582(c)(1)(A)).

A defendant seeking a reduction in sentence must fully exhaust all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or wait 30 days from the receipt of such a request by the warden of the defendant's facility before filing a motion. *See* 18 U.S.C. § 3582(c)(1)(A). The Fifth Circuit has "clarified that the requirement that a defendant file a request with [BOP] before filing a motion in federal court is a mandatory, but non-jurisdictional, claim-processing rule." *United States v. Sentimore*, No. 04-382, 2020 WL 7630778, at *1 (E.D. La. Dec. 22, 2020) (Lemmon, J.) (citing *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020)). "As such, it is mandatory if properly raised, but may be waived or

forfeited by an opposing party." *Id.* (citing *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 714 (2019)).

According to Neal, (Rec. Doc. 397 p. 26) a Dr. L. Pujol denied his request on March 21, 2025. Neal filed another administrative remedy on March 25, 2025, which was denied. Neal appealed on June 10, 2025. The appeal has been pending for more than 30 days.

### III.    Neal has not demonstrated extraordinary or compelling reasons for a sentence reduction, including "unusually long sentences".

As a threshold matter, the government contests the United States Sentencing Commission's authority to include "unusually long sentences" in recent amendments to the relevant Sentencing Guidelines provisions in U.S.S.G. § 1B1.13, upon which Neal's motion relies. *See* Rec. Doc. 397, pp. 29-30. Because the Commission's amendments to § 1B1.13 were so recent, the government has not located any cases either accepting or rejecting its position.

### A.    The Sentencing Commission's recent amendments to U.S.S.G. § 1B1.13.

Neal claims that due to the fact that he has served more than ten years, the court can now give a fresh review of his sentence. However, the law is very unsettled in this area. The Sentencing Reform Act of 1984 "overhaul[ed] federal sentencing practices." *Tapia v. United States*, 564 U.S. 319, 325 (2011). To make prison terms more determinate, Congress established the Sentencing Commission as an independent agency in the Judicial Branch and "authorized it to promulgate Sentencing Guidelines and to issue policy statements." *Dillon*, 560 U.S. at 820; *see also* 28 U.S.C. §§ 991, 994(a). "The Commission was born of congressional disenchantment with the vagaries of federal sentencing and of the parole system," and Congress directed the Commission to "eliminate unwarranted disparities in punishment of similar defendants who commit similar crimes." *Neal v. United States*, 516 U.S. 284, 290-91 (1996).

Congress also abolished the practice of federal parole, specifying that a "court may not modify a term of imprisonment once it has been imposed" except in certain enumerated circumstances. 18 U.S.C. § 3582(c); *see also Tapia*, 564 U.S. at 325. One of those circumstances, compassionate release, authorizes a court to "reduce [a] term of imprisonment . . . after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds," as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." As originally enacted, § 3582(c)(1)(A) authorized such reductions only "upon motion of the Director of the Bureau of Prisons." Sentencing Reform Act § 212(a)(2), 98 Stat. 1998.[3]

Congress directed the Sentencing Commission to promulgate "general policy statements regarding . . . the appropriate use of . . . the sentence modification provisions set forth in [Section] 3582(c)."  28 U.S.C. § 994(a)(2)(C). Congress instructed the Commission, in promulgating policy statements regarding § 3582(c)(1)(A), to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Congress specified that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 944(t).

---

[3] Under the system of federal parole, 18 U.S.C. § 4205(g) provided BOP with authority to move "[a]t any time" for the sentencing court to "reduce any minimum term [of imprisonment] to the time the defendant has served." 18 U.S.C. § 4205(g) (repealed). BOP regulations explained that BOP generally used that authority "only in particularly meritorious or unusual circumstances which could not reasonably have been foreseen by the court at the time of sentencing," including where "there is an extraordinary change in an inmate's personal or family situation or if an inmate becomes severely ill." 45 Fed. Reg. 23,364, 23,366 (Apr. 4, 1980). As the Senate Report accompanying the Sentencing Reform Act explained, § 3582(c)(1)(A) was intended to be "similar to the authority" afforded to BOP under § 4205(g). S. Rep. No. 98-225, at 121 n.298 (1983).

In 2006, the Commission promulgated U.S.S.G. § 1B1.13. As amended in 2016, the policy statement described four categories of reasons that should be considered extraordinary and compelling: "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons" "determined by the Director of the Bureau of Prisons" to be "extraordinary and compelling" "other than, or in combination with," the reasons described in the other three categories. Sentencing Guidelines App. C Supp., Amend. 799 (Nov. 1, 2016).

In the First Step Act of 2018, Congress amended § 3582(c)(1)(A) to allow defendants, as well as BOP itself, to file motions for a sentence reduction. *See* Pub. L. No. 115-391, Tit. VI, § 603(b), 132 Stat. 5194, 5239. As modified, § 3582(c)(1)(A) now states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Shortly after the First Step Act's enactment, the Sentencing Commission lost a quorum of voting members, and remained without a quorum for more than three years. *See* 88 Fed. Reg. 28,254, 28,256 (May 3, 2023). The Commission thus did not immediately amend the policy statement to account for the First Step Act's procedural change. In the intervening years, nearly every circuit held that the existing policy statement's description of what should be considered "extraordinary and compelling" reasons for a sentence reduction was not applicable to defendant-filed motions. *See United States v. Ruvalcaba*, 26 F.4th 14, 21 (1st Cir. 2022) (collecting cases).

*But see United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021). As a result, and in the absence of a binding policy statement, the courts of appeals were obliged to construe the plain meaning of the phrase "extraordinary and compelling reasons" as used in § 3582(c)(1)(A)(i).

The majority of circuits to consider the question—including the Fifth Circuit—determined that a change in the law, whether considered alone or in combination with other factors, cannot constitute an "extraordinary and compelling" reason for a sentence reduction. *See United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (unpublished); *United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021); *United States v. McCall*, 56 F.4th 1048, 1050 (6th Cir. 2022) (en banc); *United States v. Thacker*, 4 F.4th 569, 571 (7th Cir. 2021); *United States v. Crandall*, 25 F.4th 582, 585-86 (8th Cir. 2022); *United States v. Jenkins*, 50 F.4th 1185, 1198-1200 (D.C. Cir. 2022). Four circuits, in contrast, have taken the view that a change in the law can form part of an individualized assessment of whether to grant a sentence reduction, but only in combination with other case-specific factors. *Ruvalcaba*, 26 F.4th at 28; *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020); *United States v. Chen*, 48 F.4th 1092, 1097-98 (9th Cir. 2022); *United States v. McGee*, 992 F.3d 1035, 1047-48 (10th Cir. 2021).

In 2022, the Sentencing Commission regained a quorum, and, after public notice and comment, voted on April 5, 2023 to promulgate amendments to the Guidelines Manual, including to § 1B1.13's policy statement. 88 Fed. Reg. 28,254, 28,254-28,281 (May 3, 2023); *seealso* Sentencing Commission Public Meeting Tr. 27-82 (Apr. 5, 2023) ("4/5/23 Tr.").[4] The amendments to § 1B1.13 render the policy statement applicable to defendant-filed motions. As relevant here, the amendments also purport to allow, with certain limitations, consideration of

---

[4] https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20230405/20230405_transcript.pdf.

changes in law—including ones Congress has chosen not to make retroactive—when determining whether a defendant has presented an extraordinary and compelling reason for a sentence reduction. That change is reflected in new subsections (b)(6) and (c), which provide:

> (6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.
>
> (c) Limitation on Changes in Law.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

88 Fed. Reg. at 28,255; *see also* U.S.S.G. § 1B1.13(b)(6), (c).

The Commission divided 4-3 on whether to promulgate the amendments to § 1B1.13. *See* 4/5/23 Tr. 81-82. The dissenting Commissioners explained that, in their view, the policy statement "goes further than the Commission's legal authority extends," and the Commission had made "a seismic structural change to our criminal justice system without congressional authorization or directive." 4/5/23 Tr. 60 (Commissioner Wong, delivering joint statement). In particular, the Commission's decision to allow nonretroactive changes in law to establish a basis for a sentence reduction "supplants Congress's legislative role" and would authorize courts "to

revisit duly imposed criminal sentences at the ten-year mark based on intervening legal developments that Congress did not wish to make retroactive." 4/5/23 Tr. 60-61. The resulting "separation of powers problem," the dissenting Commissioners explained, "should be apparent," as "[i]t is not the Commission's role to countermand Congress's legislative judgments." 4/5/23 Tr. at 61.

The Commission submitted its proposed Guidelines amendments to Congress on April 27, 2023. Because Congress did not act to modify or disapprove of the amendments, they became effective on November 1, 2023. 88 Fed. Reg. at 28,254; *see also* 28 U.S.C. § 994(p).

**B.    In promulgating § 1B1.13(b)(6), the Sentencing Commission exceeded its congressionally delegated authority.**

**i.    Section 1B1.13(b)(6) conflicts with § 3582(c)(1)(A)'s plain text, context, and purpose.**

Congress directed the Commission to "describe what should be considered extraordinary and compelling reasons," 28 U.S.C. § 994(t), but the Commission's authority necessarily is limited by Congress's clear directive that any such reasons be both extraordinary and compelling. Nonretroactive changes in sentencing law are neither. To the contrary, "in federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Dorsey v. United States*, 567 U.S. 260, 280 (2012). Although Congress delegated broad authority to the Commission, § 1B1.13(b)(6) is contrary to the statute's text, structure, and purpose, and thus is invalid.

Congress's delegation of authority "is not unlimited." *Batterton v. Francis*, 432 U.S. 416, 428 (1977). Even when reached through an exercise of delegated authority, an agency's interpretation of a statute must be set aside if the agency's interpretation is not "reasonable." *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 58 (2011) (quotation

10

marks omitted); *see also Batterton*, 432 U.S. at 428. An agency cannot adopt an impermissible reading of the statute—*i.e.*, a reading that exceeds the gap left by Congress. *See Mayo Found.*, 562 U.S. at 53-58; *Batterton*, 432 U.S. at 428. The Commission in particular "was not granted unbounded discretion," and, as the Supreme Court has explained, "[b]road as" the Commission's "discretion may be," it "must bow to the specific directives of Congress." *United States v. LaBonte*, 520 U.S. 751, 753, 757 (1997); *cf. Mistretta v. United States*, 488 U.S. 361, 379 (1989) (reasoning that the discretion vested in the Commission does not violate the nondelegation doctrine because the Sentencing Reform Act "sets forth more than merely an 'intelligible principle' or minimal standards" to guide that discretion). In the Sentencing Reform Act, itself, Congress directed the Commission to ensure that its guidelines and policy statements remain "consistent with all pertinent provisions of any Federal statute." 28 U.S.C. § 994(a). And Congress authorized the Commission only to "make recommendations to Congress concerning modification or enactment of statutes relating to sentencing." 28 U.S.C. § 995(a)(20).

Section 3582(c)(1)(A) provides an "except[ion]" to the overarching principle of federal sentencing law that a "federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon*, 560 U.S. at 819 (quoting 18 U.S.C. § 3582(c)). Congress plainly instructed that any reason sufficient to overcome that general principle must be "extraordinary and compelling." 18 U.S.C. § 3582(c)(1)(A)(i). No reasonable interpretation of that phrase's text, particularly when considered in light of the statute's structure and purpose, can encompass nonretroactive or intervening changes in law. The Fifth Circuit, in an unpublished decision, has already held as much, determining that § 3582(c)(1)(A)(i)'s clear meaning excludes intervening developments in sentencing law from constituting "extraordinary and compelling" reasons for a sentence reduction, whether considered alone or in connection with other factors and

11

circumstances. *See McMaryion*, 2023 WL 4118015, at * 2 ("[A] prisoner may not leverage non-retroactive changes in criminal law to support a compassionate release motion, because such changes are neither extraordinary nor compelling."). The Commission's interpretation of the statute as set forth in § 1B1.13(b)(6) is thus unreasonable and therefore invalid. *Mayo Found.*, 562 U.S. at 58; *see LaBonte*, 520 U.S. at 753 (invalidating Guidelines amendment where "the Commission's interpretation is inconsistent with [the statute's] plain language").

"[T]he Commission does not have the authority to amend the statute" or "to override the statute" as courts have construed it. *See Neal*, 516 U.S. at 290, 294.[5] For its part, the Supreme Court has not hesitated to reject the Sentencing Commission's purported interpretation of a statute when inconsistent with plain statutory language—including language the Court had previously authoritatively construed. In *Neal*, for example, the Court held that Guidelines commentary addressing the method for calculating the weight of LSD did not alter the Court's interpretation of the phrase "a mixture or substance containing a detectable amount" of certain drugs as used in 21 U.S.C. § 841(b). *Id.* at 287-89 (describing the Court's prior decision in *Chapman v. United States*, 500 U.S. 453 (1991)). Although the Court considered it "doubtful" the Commission intended to "displace" the Court's interpretation of § 841(b), the Court nevertheless explained that if the commentary was intended to do so, the Commission's action could not "be squared" with the Court's prior determination. *Id.* at 293-94. "Once we have determined a statute's meaning," the Court explained, "we adhere to our ruling under the

---

[5] Because the Fifth Circuit did not suggest that § 3582(c)(1)(A)(i)'s text is ambiguous, it also is unnecessary for this Court to "decide what, if any, deference [would be] owed the Commission in order to reject its alleged contrary interpretation." *See Neal*, 516 U.S. at 295; *see also DePierre v. United States*, 564 U.S. 70, 87 (2011) (explaining that the Supreme Court has not addressed what deference is owed to the Commission's interpretations of a statute); *LaBonte*, 520 U.S. at 762 n.6 ("Inasmuch as we find the statute at issue here unambiguous, we need not decide whether the [Sentencing] Commission is owed deference under *Chevron*.").

doctrine of stare decisis, and we assess an agency's later interpretation of the statute against that settled law." *Id.* at 295; *see also LaBonte*, 520 U.S. at 753 (invalidating Guidelines amendment where "the Commission's interpretation is inconsistent with [the statute's] plain language").

The same result is warranted here. The Fifth Circuit directly construed, as a statutory matter, the phrase "extraordinary and compelling" as used in § 3582(c)(1)(A). The Sentencing Commission "does not have the authority" to "override" that construction of the statute's clear meaning. *Neal*, 516 U.S. at 290, 294.

The Fifth Circuit's ruling, in any event, is correct. To justify a sentence reduction under § 3582(c)(1)(A)(i), a proffered reason must be both "extraordinary" and "compelling." As a matter of plain language, intervening changes in the law, including the changes in the First Step Act cited by Neal, are neither. Consistent with the "'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute,'" *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018), the word "extraordinary" should be understood "to mean 'most unusual,' 'far from common,' and 'having little or no precedent.'" *United States v. McCall*, 56 F.4th 1048, 1055 (6th Cir. 2022) (en banc) (quoting *Webster's Third New International Dictionary of the English Language* 807 (1971) (*Webster's*)). Far from being unusual, uncommon, or unprecedented, a defendant's lawfully imposed sentence simply reflects the law at the time he was sentenced.

In Section 401 of the First Step Act, Congress "amended the recidivist penalties of 21 U.S.C. § 841(b)(1)(A) by now requiring the predicate offenses triggering a sentence enhancement to be either serious drug felonies or serious violent felonies (as opposed to felony drug offenses)." *United States v. Daggs*, No. 09-166, 2020 WL 6559408, at *2 (E.D. La. Nov. 9,

13

2020) (Feldman, J.). However, Congress made the deliberate choice not to make that amendment applicable to defendants who had been sentenced before the Act's enactment, specifying that the change would apply only "if a sentence for the offense has not been imposed as of such date of enactment." *See United States v. Staggers*, 961 F.3d 745, 753 (5th Cir. 2020). In so doing, Congress adhered to "the ordinary practice" in "federal sentencing" of "apply[ing] new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *See Dorsey*, 567 U.S. at 280; *cf.* 1 U.S.C. § 109 (general nonretroactivity provision).

Given Congress's deliberate choice not to make the First Step Act's change to § 841(b) applicable to defendants who had already been sentenced, "there is nothing 'extraordinary' about" the fact that Defendant's sentence reflects the statutory penalty that existed at the time he was sentenced. *See Thacker*, 4 F.4th at 574. That sentence "was not only permissible but statutorily required at the time." *See United States v. Maumau*, 993 F.3d 821, 838 (10th Cir. 2021) (Tymkovich, C.J., concurring). And when Congress enacted the First Step Act, it specifically declined to disturb Neal's sentence for his § 841(b) conviction, even as it made other (previous) statutory changes applicable to defendants previously sentenced. In Section 404 of the same Act, for example, Congress expressly enacted a mechanism allowing defendants convicted under certain drug statutes (those for which penalties had been modified by certain provisions of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372) to seek retroactive application of those statutory changes in their cases. Section 404 authorizes a sentencing court to "impose a reduced sentence as if [those provisions] of the Fair Sentencing Act" had been in effect at the time of the defendant's offense. § 404(b), 132 Stat. 5222. But Congress simultaneously declined to disturb § 841(b) sentences that had already been imposed

14

notwithstanding the different penalties that Section 401 would require courts to apply at future sentencings.

A nonretroactive change to a statutory provision likewise cannot constitute a "compelling" reason for a sentence reduction. When Congress enacted the Sentencing Reform Act of 1984, "[c]ompelling" meant (and still means) "forcing, impelling, driving." *McCall*, 56 F.4th at 1055 (quoting *Webster's* 463). Thus, for a reason to be "compelling" under Section 3582(c)(1)(A)(i), it must provide a "forcing, impelling, [or] driving" reason to disturb the finality of a federal sentence. *Id.* (quotation marks omitted). Even beyond the First Step Act's explicit determination not to apply the amendment to § 841(b) retroactively, ordinary principles of nonretroactivity already consider, and reject, the notion that changes in statutory law generally should be applied retrospectively. Congress enacts new sentencing statutes against a background principle, codified in 1 U.S.C. § 109, that a criminal statute does not change the penalties "incurred" under an older criminal statute "unless the repealing Act . . . so expressly provide[s]." The "strong presumption against statutory retroactivity" "is 'deeply rooted in our jurisprudence' and 'embodies a legal doctrine older than our Republic.'" *Jenkins*, 50 F.4th at 1198 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)). To treat a nonretroactive change in the law as a "compelling" reason to disturb a final sentence would thus undo the balance already struck by ordinary nonretroactivity principles. Nothing about a nonretroactive change in the law forces, impels, or drives such a nonsensical outcome.

Any disparity between Neal's sentence and the sentence he would receive today is the product of deliberate congressional design—namely, Congress's decision not to make the First Step Act's change to § 841(b) applicable to defendants who had already been sentenced. As the Supreme Court has recognized, such "disparities, reflecting a line-drawing effort, will exist

whenever Congress enacts a new law changing sentences (unless Congress intends re-opening sentencing proceedings concluded prior to a new law's effective date)." *Dorsey*, 567 U.S. at 280. And treating Congress's express adherence to "ordinary practice" in federal sentencing, *id.*, "as simultaneously creating an extraordinary and compelling reason for early release" would contravene various canons of construction. *Andrews*, 12 F.4th at 261.

Accordingly, a nonretroactive change in the law cannot serve as either an "extraordinary" or a "compelling" reason for a sentence reduction in isolation or as adding to a package of such "reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Whether considered alone or in combination with other asserted factors, the possibility that a previously sentenced defendant might receive a lower sentence if he were sentenced today is a "legally impermissible" consideration for purposes of determining whether an extraordinary and compelling reason exists. *Jenkins*, 50 F.4th at 1202 (internal quotation marks omitted); *see also United States v. Jarvis*, 999 F.3d 442, 444 (6th Cir. 2021) (explaining that a prospective change to sentencing law is a "legally impermissible ground" for finding an "extraordinary and compelling reason," even when it is "combined with" other considerations).

### ii. The Commission's interpretation of § 3582(c)(1)(A) is in tension with basic separation-of-powers principles.

In upholding the Sentencing Commission's constitutionality, the Supreme Court observed that the Commission is not vested with "the legislative responsibility for establishing minimum and maximum penalties for every crime." *Mistretta*, 488 U.S. at 396. "Congress generally cannot delegate its legislative power to another Branch," *id.* at 372, and "[w]hatever views may be entertained regarding severity of punishment . . . these are peculiarly questions of legislative policy." *Gore v. United States*, 357 U.S. 386, 393 (1958). The Commission does not pose a

nondelegation or separation-of-powers concern, the Court held, precisely because Congress delegated to the Commission "nonadjudicatory functions that do not trench upon the prerogatives of another Branch." *Mistretta*, 488 U.S. at 388. Section 1B1.13(b)(6) contravenes those limits by purporting to empower courts to ignore Congress's retroactivity determinations on a case-by-case basis.

The separation-of-powers concern is particularly apparent when considering the Commission's directive regarding its own retroactivity determinations. Section 3582(c)(2) permits a defendant "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" to move for a sentence reduction "consistent with applicable policy statements issued by the Sentencing Commission," and U.S.S.G. § 1B1.10 identifies particular Guidelines amendments that the Commission has elected to make retroactive. *See* U.S.S.G. § 1B1.10(a), (d). In § 1B1.13(b)(6), the Commission expressly excluded "an amendment to the Guidelines Manual that has not been made retroactive" from qualifying as an extraordinary and compelling reason for a sentence reduction. U.S.S.G. § 1B1.13(b)(6); *see also* 88 Fed. Reg. at 28,259. The Commission accordingly precluded courts from using compassionate release as an end-run around the Commission's own determinations concerning the retroactive application of its Guidelines amendments. But by permitting other changes in law, including a statutory change that Congress explicitly declined to make retroactive, to qualify, the Commission declined to afford the same respect to Congress's retroactivity determinations. That counterintuitive result cannot be squared with the Commission's statutory authority. *See, e.g.*, *LaBonte*, 520 U.S. at 757 (the Commission "must bow to the specific directives of Congress").

17

This is especially true with respect to Neal's invocation of Section 401 of the First Step Act as grounds for a reduction. In the same statute in which Congress amended § 3582(c)(1)(A) to permit defendants to directly file sentence-reduction motions, Congress made the deliberate choice not to make Section 401 applicable to a defendant who was sentenced before the First Step Act's enactment. Congress specified that the change would apply only "if a sentence for the offense has not been imposed as of such date of enactment." § 401(c), 132 Stat. 5221. Any disparity between Neal's sentence and the sentence he would receive today thus is the product of deliberate congressional design, and there is no reason to think that "the same Congress that specifically decided to make these sentencing reductions non-retroactive in 2018 somehow mean[t] to use a general sentencing statute from 1984 to unscramble that approach." *See Jarvis*, 999 F.3d at 444; *Andrews*, 12 F.4th at 261 ("[W]e will not construe Congress's nonretroactivity directive as simultaneously creating an extraordinary and compelling reason for early release. Such an interpretation would sow conflict within the statute."). For all these reasons, the Commission overstepped its authority when it promulgated § 1B1.13(b)(6). As a result, Neal cannot rely on that provision to justify a sentence reduction, and his motion should be denied.

   C.    **Neal has not demonstrated any other extraordinary and compelling reasons for a sentence reduction.**

Neal's remaining argument is that disparities exist between his sentence and sentences received by "comparably situated defendants . . . being sentenced today under a different sentencing structure and/or received a reduction in sentence based on the need to avoid unwarranted sentencing disparities." Rec. Doc. 397, pp. 31 - 32. As explained above, Neals's statutory minimum and maximum sentences and his guidelines imprisonment range would be the

same if he were sentenced today. Further, Judge Barbier imposed a guideline sentence of 360 months As a result, there is nothing problematic or unusual about Neal's sentence.

Neal does not cite any other extraordinary and compelling circumstances, such as rehabilitation efforts or health problems. Even if he had, "rehabilitation, though certainly commendable, is not extraordinary or compelling." *See United States v. Hudson*, No. 10-329, 2021 WL 2912012, at *4 (E.D. La. July 12, 2021) (Africk, J.); *see also United States v. Harrelson*, No. 4:11-CR-182-SDJ, 2022 WL 2910013, at *6 (E.D. Tex. July 22, 2022) ("The Court may consider post-sentencing rehabilitation efforts in ruling on a compassionate-release motion, but 'rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'") (quoting 28 U.S.C. § 944(t)). Further, the government has obtained copies of Neal's medical records, which do not suggest the type of debilitating medical condition that qualifies for early release. Because Neal has not demonstrated any extraordinary or compelling reasons for a sentence reduction, his motion should be denied.

**IV.    The sentencing factors set forth in 18 U.S.C. § 3553(a) weigh against early release.**

Even if Neal could establish an extraordinary and compelling circumstance, consideration of the applicable § 3553(a) sentencing factors does not support a sentence reduction. Those factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct; [and]

(C) to protect the public from further crimes of the defendant[.]

18 U.S.C. § 3553(a).

Neal is a career criminal who conspired to kill a witness, as well as dealing drugs and endangering our community.

Neal's criminal conduct involved regular and deliberate decisions to violate the law, that is, selling large amounts of illegal drugs and trying to kill a witness as part of a years-long drug conspiracy. Other courts, including other sections of this Court, have denied requests for compassionate release based on similar criminal conduct. *See Hudson*, 2021 WL 2912012, at *5 (denying compassionate release for defendant who was co-leader of Harvey Hustlers gang and whose "criminal history shows a propensity for violence and a consistent disregard for the law"); *United States v. Lao*, No. 2:16-CR-905, 2020 WL 5258489, at *3 (S.D. Tex. Sept. 1, 2020) (denying compassionate release where "[d]efendant was a crack dealer affiliated with the dangerous gang Tango Orejon"). Ten years' imprisonment is an insufficient amount of time for Neal to be punished for his crimes or for this Court to be satisfied that releasing Neal will not endanger the safety of others in the community—a factor that, in addition to being a valid concern under § 3553(a), is an independent reason to deny Neal's motion. *See* U.S.S.G. § 1B1.13(a)(2) (stating that, to grant compassionate release, the Court must determine that "[t]he defendant is not a danger to the safety of any other person or the community"); *United States v. Mazur*, 457 F. Supp. 3d 559, 564-65 (E.D. La. 2020) (Africk, J.) ("Even if the Court were to find that Mazur's circumstances presented extraordinary and compelling reasons to grant compassionate release, he still has not demonstrated that he is not a danger to the safety of any

other person or to the community[.]") (quotation marks omitted); *United States v. White*, No. 16-40, 2021 WL 1721016, at *5 (E.D. La. Apr. 30, 2021) (Barbier, J.).

Accordingly, even assuming Neal could establish extraordinary and compelling circumstances, the § 3553(a) factors—most notably, the nature and circumstances of the offense, the need for the sentence imposed to provide just punishment for the offense, the need for the sentence imposed to afford adequate deterrence to criminal conduct, and the need for the sentence imposed to protect the public from further crimes of the defendant—weigh against a sentence reduction. Neal's motion should be denied.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny Neal's motion for release based on the reasons stated above. Neal is a dangerous career offender and would present a significant danger to the safety of the citizens of the Eastern District of Louisiana. He has failed to show any extraordinary reasons on which this court could or should grant him any relief. The court sentenced him to 360 months for very serious crimes. He should remain in jail.

> Respectfully submitted,
>
> MICHAEL M. SIMPSON
> ACTING UNITED STATES ATTORNEY
>
> */s/ Carter K. D. Guice, Jr.*
> CARTER K.D. GUICE JR.
> Assistant United States Attorney
> LA Bar Roll No. 16771
> U.S. Attorney's Office (E.D. La.)
> 650 Poydras Street, Suite 1600
> New Orleans, Louisiana 70130
> Telephone: (504) 680-3072
> E-Mail: carter.guice@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2025, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Louisiana, using the electronic case filing system of the court. I also mailed a paper copy to Byron Neal, Register Number: 30456-034 FCI Terminal Island, Federal Correctional Institution, P.O. Box 3007, San Pedro, CA  90733.

*/s/Carter K. D. Guice, Jr.*
CARTER K.D. GUICE JR.
Assistant United States Attorney